JAMES H. CRADDOCK ET AL. *v.* J. S. JORDAN.

J. B. WILDER *v.* W. J. CRADDOCK ET AL.

[Abstract Kentucky Law Reporter, Vol. 2—387.]

**Jurisdiction of the Louisville Chancery Court.**

The Louisville Chancery Court has no jurisdiction nor power to issue an execution addressed to the marshal of that court to levy on and sell property outside of Jefferson county to satisfy a judgment of said court. The court's jurisdiction extends only over said county, and a levy and sale of property by the marshal under an execution, located in another county, is void.

APPEALS FROM WARREN CIRCUIT COURT.

April 16, 1881.

OPINION BY JUDGE HINES:

On the appeal of James H. Craddock we need consider but one question, and that is whether an execution issuing from the Louisville Chancery Court in the county of Jefferson, addressed to the marshal of that court, and by him levied upon land lying in Warren county, gives a lien in favor of the execution plaintiff. The execution, in the usual form, commands the marshal of the estate of Wm. J. Craddock to make the sum of $3,702.13, without designating any particular property and without specifying jurisdiction within which the marshal is to exercise his functions.

Counsel for appellants insists that the power to make a valid levy by the marshal on land lying outside of Jefferson county is conferred by an act of February 28, 1835, and that this act was not repealed by the Civil Code in force prior to the 1st of January, 1877. The portion of the Act of 1835, Ch. 900, § 9, relied upon is as follows: It shall be the duty of the marshal "to execute the commands and orders of the court, and to execute throughout the state, all lawful precepts directed to him, and issued under authority of said court."

In view of the fact that at common law no execution was operative beyond the territorial jurisdiction of the court issuing it, whether it was directed to the officer of that court or to the officer of the court within whose jurisdiction the property to be seized was situated, it is questionable whether the legislature, in the use of the term "precepts," intended to embrace an execution by means of which the officer could invade the territorial jurisdiction of another court of equal dignity, and seize the property of the citizen lying therein. Prior to the Act of 1796 there was no law by which the court of one county could cause an execution to be issued and directed to the officer of another county; and at the time of the passage of the Act of 1835 there was no law authorizing any court to send its officer to execute process or precepts outside of its jurisdictional limits. The word "precepts" ordinarily will be taken to embrace all writs, but it appears to us that, if it had been the intention of the legislature to confer upon the marshal of the Louisville Chancery Court the exceptional and extraordinary power of taking and executing a fieri facias in another county, the specific terms "fieri facias," or "writ of execution" would have been used instead of the general term "precepts."

This is quite a different matter from the execution of a summons requiring attendance of the party in order to inquire into the fact of liability on his part. The distinction might well be drawn, but as we are of opinion that the Act of 1835 has been repealed by Myers' Code (1854), Ky. Code of Prac. (1854), it is considered unnecessary to discuss this aspect of the case. Section 817 of Code is as follows: "Process of the court to other counties may be issued and directed, and shall be executed and returned, as such process from a circuit court."

At the time the section quoted was adopted the law required that when a process was to be executed in another county it should be directed to the sheriff of that county, and should be executed and returned by such sheriff. This section seems to import that and nothing more. It is in reference to the subject-matter of the service of processs in other counties of the state, and was apparently intended to provide the method and manner of the service of such process, and by necessary implication excludes all other methods. The general rule is that when, in the revision or codification of the law, a certain subject-matter is treated, the presumption is indulged that all the law with reference to the subject has been considered and is embraced in the enactment. Myers' Code (1854), § 875, Ky. Code of Prac., 1854, does not conflict with this view, because it expressly provides that all laws "in any case provided for by this Code" are repealed.

The case of *Lloyd's Admr. v. McCauley's Admr.*, 14 B. Mon. (Ky.) 535, is not in point, because Myers' Code, § 817, was not embraced in the Code of 1857. No provision was made in that code for service of process outside of the county from which it issued. We are, therefore, of the opinion that under the Code of 1854 the Louisville Chancery Court had no authority by execution and through its marshal to levy upon land lying in any county other-than Jefferson county.

As to the appeal of J. B. Wilder, we think the judgment of the court below is correct. The weight of the evidence is to the effect that appellant agreed with W. J. Craddock to receive the 57¾ acres of land in full discharge of his claim; and having fully considered the evidence we deem it unnecessary to set it forth in detail, as it is our conclusion from such examination, and not from the detailed statement of the evidence, that determines the rights of the parties.

Wherefore the judgments on the appeals of James H. Craddock and J. B. Wilder are *affirmed.*

*H. T. Clark, for Wilder.*

*Halsell & Mitchell, for James H. Craddock.*

*R. Rodes, Wright & McElroy, for Jordan.*

*J. W. & G. R. Gorin, for W. J. Craddock.*